IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN TORREZ, | Case No.  1:09-cv-00626-JLT |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| vs. | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF EVELYN TORREZ AND AGAINST DEFENDANT MICHAEL J. ASTRUE |
| MICHAEL J. ASTRUE, Commissioner of Social Security | |
| Defendant. | |

## BACKGROUND

Plaintiff Evelyn Torrez ("Plaintiff") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

## FACTS AND PRIOR PROCEEDINGS[1]

On October 13, 2005, Plaintiff filed an application for SSI benefits under Title XVI of the Act alleging that disability had prevented her from working since January 21, 2005.  AR at 66-69. After initial denial of her request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 40-41.  A hearing was held on December 12, 2007.  Id. at 207-35.   On March 20, 2008, the ALJ issued a decision denying benefits.  Id. at 7-16.  Specifically,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

the ALJ found that Plaintiff was not disabled within the meaning of the Act.  Id. at 16.  On December 20, 2008, the Appeals Council affirmed this decision.  Id. at 2-4.

Hearing Testimony

Plaintiff stated she was born on July 10, 1956 (51 at the time of the hearing).  AR at 210.  She testified she had some college education (32 credits) and had studied secretarial science.  Id.

Plaintiff described her last job as a home care provider.  AR at 211.  In that capacity, she stated that she had taken care of her mother-in-law for about three months until she died from cancer.  Id.  She testified that this job consisted of driving her mother-in-law to doctor appointments and doing some cooking for her.  Id.  She characterized this work as full-time.  Id. at 212.

Before that, Plaintiff testified she restored homes.  AR at 212.  She stated that this job involved physical work and clean-up and required her, with assistance from others, to lift objects up to 150 pounds.  Id.

Before her work as a home restorer, Plaintiff testified that she worked for a company called High Tech Unlimited as a "gofer."  AR at 212.  She stated she performed jobs for her boss such as yard work, laundry, cooking, office cleaning and washing cars.  Id. at 213.  She stated she did this work for about a year.  Id.

Plaintiff testified that prior to her "gofer" job, she worked for the IRS.  AR at 214.  She stated she worked as a transcription clerk and a mail clerk.  Id.  Although this work was permanent, she stated that it was "seasonal."  Id.  She described these jobs as requiring her to stand and lift things but stated that she spent most of her time sitting at a computer.  Id.  She stated she quit this work because of problems from an abusive relationship with her husband.  Id. at 215.

Plaintiff testified that she performed janitorial work before going to work for the IRS.  AR at 215.  She described this job as requiring her to perform tasks such as buffing, scraping and waxing floors, and cleaning and fixing toilets.  Id.

Nevertheless, Plaintiff testified that she suffered from various physical ailments.  In particular, she stated that she suffered from back and arm pain and asserted that she had trouble holding on to things.  AR at 215.  Plaintiff also described problems with her legs, including numbness, and she complained of breathing congestion.  Id. at 216.  Further, Plaintiff described pain

1  from her spine, and reported that she felt numbness on her left side about 50% of the time. Id. at
2  217. She described her left side as "always" numb. Id. She described her pain as throbbing,
3  vibrating and shocking and she said that any physical activity aggravated this pain. Id. She stated
4  that she took Codeine and Motrin for her pain. Id. at 218. She estimated that her arm problems
5  hindered her ability to pick items up and stated that she didn't think she could lift more than 20
6  pounds. Id. at 219. She stated that she could carry this weight about 25 feet before she would have
7  to put it down. Id. at 222. Plaintiff stated that she suffered from asthma also. Id. at 226.

8      Plaintiff stated that she could walk approximately two blocks at one time before needing to
9  rest. AR at 220. She believed she could stand about 20 to 30 minutes at one time without having to
10 sit or lay down. Id. She estimated she could sit for about 45 minutes at one time. Id. at 221.

11     Plaintiff testified she suffered from depression also. AR at 216. She said that the depression
12 was caused by stress due to having a physically abusive relationship with her husband. Id. at 223.
13 She stated that her husband nearly choked her to death on one occasion about seven years prior to the
14 hearing. Id. She said that she had flashbacks to the abuse and that this had made it difficult for her to
15 sleep. Id. at 222. She also claimed that anxiety from the past abuse sapped her energy. Id. at 224.
16 She said that although she had thought about suicide in the past, she had decided that her problems
17 were not her fault and she no longer had such thoughts. Id. at 226. She reported that she felt
18 depressed and alone and that she cried a lot. Id. at 229. She said that she enjoyed watching
19 television shows like "Burning Bed" where women fight back against their abusers. Id. at 225.

20     Plaintiff stated that she currently lives alone but is still legally married to her husband. AR at
21 226. She stated she had no money to file for a divorce. Id. She described her current income as
22 $172 a month from disability an she testified that she qualified for housing assistance under Section
23 8 which allowed her to pay only a minimal amount in rent (approximately $45 a month). Id.

24     Plaintiff described her daily activities as watching television. AR at 224. She testified also
25 that she cleaned her home. Id. at 227. She said that she had no social activities or friends and that
26 she had family in the area but that she did not see them much. Id. She said that her son did not visit
27 her very often because of animosity toward his father (who is frequently at Plaintiff's home). Id. at
28 228. Plaintiff stated that her mother lived in town but that she didn't see her much either because of

1  animosity between her and Plaintiff's husband.  Id.

2        A vocational expert ("VE"), Judith Najarian, also testified.  She characterized Plaintiff's past
3  work variously as that of file clerk/receptionist, in-home support attendant, restoration services, yard
4  worker and cleaner and janitor.  AR at 231.  She characterized the in-home specialist job as
5  "medium" work characterized by the Department of Occupational Titles ("DOT") as Level 3 work.
6  Id.  She described the restoration work performed by Plaintiff as "heavy," her "gofer" work at Hi-
7  Tech Unlimited as "medium," her work for the IRS as a data entry specialist as "sedentary and semi-
8  skilled," her work for the IRS as a mail clerk as "light and unskilled" and her janitorial work as
9  "medium" and "semi-skilled."  Id.  She characterized Plaintiff's work as a file clerk/receptionist as
10 "light, level 3 " work under the DOT, but considered Plaintiff's description of lifting as much as 100
11 pounds in that work as constituting "heavy" work.  Id. at 232.

12       The ALJ posed two hypotheticals to the VE.  In the first, he described a person of Plaintiff's
13 age, education and work experience who could lift 100 pounds occasionally and 50 pounds
14 frequently.  AR at 232.  He described this person as being capable of standing/walking and sitting
15 each for six hours in an eight-hour day.  Id.  The person was restricted to performing simple,
16 repetitive tasks but could maintain concentration, persistence and pace, relate and interact with
17 others, and adhere to work safety rules.  Id.  The VE opined that such a person was capable of
18 performing Plaintiff's past work as a mail clerk.  Id. at 233.  The VE limited such a person only to
19 this past work, noting, in particular, the restriction to simple, repetitive tasks.  Id. at 233.

20       The ALJ modified the next hypothetical to restrict the person described in the first
21 hypothetical to being able to carry only 20 pounds no more than 25 feet, walking no more than two
22 blocks at once, standing 10 to 15 minutes at once, sitting 20 to 30 minutes at once, and with further
23 limitations concerning gripping with the left hand, as well as difficulty relating to and interacting
24 with others.  AR at 233.  The VE opined that a person with these additional restrictions could not
25 perform any of Plaintiff's past work or any other work.  Id. at 233-34.

26       <u>Relevant Medical Evidence</u>

27       Because the only "severe" impairment found by the ALJ relates to her mental condition
28 (post-traumatic stress disorder ("PTSD") and because Plaintiff has not challenged the ALJ's failure

4

to characterize any other condition as "severe," including any alleged physical impairments, the Court will focuses only on medical evidence relating to Plaintiff's mental condition. See AR at 12.

Medical records indicate that Plaintiff was diagnosed with PTSD as long ago as 1994. See AR at 206. In November 2005, a "Licensed Marriage-Family Therapist," Sandra Carr, noted Plaintiff's history of PTSD and described her as "chronically depressed." Id. She attributed this depression to long-standing abuse from her husband. See id. She wrote, however, that Plaintiff lacked "work skills" and should be given "job re-training." Id.

In December 2005, Plaintiff was examined by psychiatrist, Dr. Shireen Damania. In her report, Dr. Damania recorded Plaintiff as reporting that she had been prescribed Zoloft for depression in the past but stopped taking it because she didn't think that it helped her. AR at 148. Dr. Damania noted that her reasoning on this point seemed "vague." Id. Plaintiff also told her that physical problems such as bronchitis, asthma and back pain, and not any mental condition, prevented her from working. Id. at 149. Plaintiff told Dr. Damania that she disagreed with an unidentified doctor who had previously "called her schizophrenic," and told Dr. Damania that she did not believe she suffered from any psychological difficulties. Id.

Dr. Damania performed a mental status examination on Plaintiff. Dr. Damania noted that Plaintiff came to the exam smiling and laughing and very friendly. AR at 150. She characterized Plaintiff's speech as normal. Id. She described Plaintiff's smiling and laughing behavior, as well as her overall affect as "broad and appropriate" to content and situation. Id. Dr. Damania recorded that Plaintiff had no suicidal or homicidal ideation. AR at 150. She characterized Plaintiff's impulse control, orientation to time, place and person and attention span as normal. Id. at 151. She described Plaintiff's memory as "in tact," her intelligence as average and her insight and judgment as "fair." Id. She found no thought disorder. Id.

As a result of her examination, Dr. Damania diagnosed no mental disorder, characterized her psychosocial stressors as "mild" and recorded a Global Functioning and Assessment ("GAF") score

of 62.[2]  AR at 151.  She characterized Plaintiff as capable of understanding, remembering, and carrying out three and four step job instructions, capable of responding to co-workers, supervisors and the public, and capable of responding appropriately to usual workplace situations and dealing with changes in routine with normal supervision.  Id.

In February 2006, Dr. Allen Middleton, a non-examining psychologist, filled out a Psychiatric Review Technique Form.  AR at 116-29.  Dr. Middleton reviewed the record and, though noting a past history of PTSD, characterized Plaintiff as suffering from no determinable medical impairment and noted that prior mental status examinations (in particular Dr. Damania's) described her mental state as normal.  Id. at 128.

In December 2006, Plaintiff was seen by psychologist, Dr. Greg Hirokawa.  Dr. Hirokawa also conducted a mental status examination.  He described Plaintiff as cooperative and pleasant, her dress as presentable and her hygiene as "fair."  AR at 106.  He characterized her psychomotor aptitude and gait as normal and noted that she had no vocal or motor abnormality.  Id.  He characterized her "stream of mental activity" as normal.  Id.  In addition, Dr. Hirokawa described Plaintiff's articulation as "clear" and her quantity of speech and thought content as "appropriate," with normal velocity and volume.  Id.  He noted that Plaintiff denied visual and auditory hallucinations and he found no evidence of delusional thinking.  Id.  He found that Plaintiff was oriented to time, place and person, had normal intellectual functioning and an in-tact memory.  Id.  He described her mood as "depressed" and noted that she had a poor appetite and sleeping habits.  Id. at 107.  He recorded that her daily activities consisted of performing multiple household "chores" but further recorded that she appeared to have "no friends."  Id. Despite this, Dr. Hirokawa determined that Plaintiff was able to perform simple three-step commands and characterized her concentration and conversation as adequate.  Id.

Dr. Hirokawa diagnosed Plaintiff as suffering from depressive, anxiety and personality

---

[2]  The GAF measurement (based on a scale of 0 to 100) represents a clinician's judgment of an individual's overall level of mental functioning.  See Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV").  A GAF score in the 61-70 range describes a person with "**[s]ome mild symptoms** (e.g. depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**  Id. at 34 (emphasis in original).

6

disorder aggravated by economic and health stressors. AR at 108. He recorded a GAF score of 62. Id. Dr. Hirokawa characterized Plaintiff's depression as "mild" and described the likelihood she would suffer emotional deterioration in a work environment as "minimal." Id.

In his functional assessment, Dr. Hirokawa found Plaintiff capable of managing her own funds. AR at 108. He described her ability to understand, remember, and carry out both simple and detailed instructions as "good." Id. He described her ability to maintain concentration and attention for extended periods of time as "good." Id. He described her ability to accept instruction and criticism from supervisors, and work and interact with co-workers, as "good." Id. at 108-09. He described her ability to perform within a normal schedule, and to sustain an ordinary work routine without special supervision as "good." Id. at 108. Finally, he concluded that Plaintiff's ability to work a normal workday and workweek at a consistent pace without interruptions due to psychological symptoms was "good." Id.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since the date of her application for SSI benefits on October 13, 2005. AR at 12. Second, at Step Two he found that Plaintiff had a severe impairment due to her suffering from post-traumatic stress disorder. Id. However, in the third step of his evaluation, the ALJ determined that no impairment, or combination of impairments, met or exceeded the level required under Agency guidelines for presumed disability. Id. at 13.

In the fourth step of his analysis, the ALJ determined that Plaintiff had the RFC to lift and carry 100 pounds occasionally and 50 pounds frequently, and sit stand, and walk for six to eight hours each in a day. AR at 13. The ALJ also determined that Plaintiff was able to maintain attention, concentration, persistence, and pace, relate to and interact with others, adapt to usual changes in work settings, and adhere to safety rules. Id. at 13-14. The ALJ determined that based on his RFC finding and the testimony of the VE that Plaintiff retained the ability to perform her past relevant work as a mail clerk (Step 4). Id. at 15-16. As a result, the ALJ determined that Plaintiff was not disabled as defined by the Act. Id. at 16.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R.

§§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since she filed for SSI benefits on October 13, 2005; (2) had a medically determinable severe impairment (post-traumatic stress disorder); (3) did not have an impairment or combination of impairments which met or equaled one of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) that she was able to perform her past relevant work as a mail clerk.  AR at 12-16.  The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act.  Id. at 16.

Plaintiff challenges the ALJ's RFC determination at Step 4 of the sequential evaluation process, and the ALJ's conclusion that her symptom testimony was not credible to the extent it differed from his RFC findings.

**DISCUSSION**

<u>1. The ALJ's Reliance on the VE's Opinion that Plaintiff Could Perform Her Past Relevant Work as a Mail Clerk Despite a Restriction to Simple, Repetitive Tasks  was Error and Remand for Further Consideration is Appropriate</u>

The record indicates that, although the ALJ concluded that Plaintiff's PTSD was "severe" at Step 2, nothing in the medical history indicated any restrictions on Plaintiff's ability to perform work due to PTSD or any other mental impairment such as depression.  For instance, in her examination, Dr. Damania diagnosed no mental disorder of any kind and stated she could discern "no evidence of any emotional lability and deterioration."  AR at 151.  She described Plaintiff's psychosocial stressors as "mild" and recorded a GAF range of 60-65.  Id.  As a result, she concluded that Plaintiff suffered no mental impairment that would hinder her ability,

> to understand, carryout and remember three and four step job instructions in a work like setting.  She is able to respond appropriately to co-workers, supervisors and the public.  She is able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision."

Id.

Following this examination, in February 2006, a non-examining agency expert, Dr.

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

9

Middleton, provided a Psychiatric Review Technique form agreeing with Dr. Damania's findings. He reported that Plaintiff did not suffer from a "medically determinable" impairment. See AR at 116, 128. Likewise, Dr. Hirokawa's mental examination in December 2006, found that Plaintiff suffered, at best, from "mild" depression. AR at 108. Dr. Hirokawa recorded a GAF score of 62, and, like Dr. Damania, found her ability to maintain concentration and attention for extended periods, to sustain an ordinary work schedule and to work normal workdays without interruptions due to any mental impairment to be "good." Id. Dr. Hirokawa characterized the likelihood of Plaintiff "emotionally deteriorating" in a work environment as "minimal." Id.

Plaintiff cites no evidence in the medical record refuting any of these findings. Instead, she asserts that the ALJ committed reversible error by failing to incorporate specific language in his RFC finding including a limitation based on Plaintiff's "severe" PTSD. Also, Plaintiff argues that even assuming the ALJ considered such a restriction in adopting the VE's opinion that Plaintiff could perform her past work as a mail clerk, this was error because the ALJ failed to ask the VE if this opinion was consistent with the standards contained in the Dictionary of Occupational Titles ("DOT") and, if not, for an explanation for the discrepancy.

In response, Defendant contends that any failure by the ALJ to incorporate a limitation in his RFC finding based on Plaintiff's PTSD was harmless because that finding was predicated on VE testimony that included a restriction to simple, repetitive tasks.[4] Defendant further contends that the VE's finding that Plaintiff could perform work as a mail clerk, despite a restriction to simple, repetitive tasks, was consistent with the DOT and not error.

At the administrative hearing, the VE expressly defined Plaintiff's past work as a mail clerk as "light" and "unskilled." AR at 232. Moreover, in concluding that Plaintiff retained the ability to perform that job, the VE expressly considered a further restriction posed in the ALJ's hypothetical, limiting the person to jobs involving only "simple, repetitive tasks." Id. at 233. Specifically citing

---

[4] Because the Court concludes that the ALJ committed reversible error when he failed to ask the VE if her opinion, that Plaintiff could perform her past work as a mail clerk, was consistent with the DOT, the Court declines to address whether the ALJ's failure to incorporate exertional restrictions in his RFC finding was harmless error. Instead, on remand, the ALJ may revisit his RFC determination and clarify whether Plaintiff has work limitations and to support this determination by citation to the record.

10

this restriction, the VE opined that such a person could perform only Plaintiff's past work as a mail clerk. Id. In finding that Plaintiff retained the ability to perform only her past work as a mail clerk, apparently the ALJ relied on the VE's opinion. AR at 16.

The best source for how a job is generally performed is "usually" the DOT. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). For the ALJ to accept vocational expert testimony that conflicts with the DOT, the record must contain "persuasive evidence to support the deviation." Id. at 846. Moreover, the ALJ has an affirmative duty to ask "whether [the VE's] testimony conflicts with the Dictionary of Occupational Titles." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). Not only must the ALJ ask the VE if his or her opinion is consistent with the DOT, the ALJ must "obtain a reasonable explanation for any apparent conflict." Id. at 1152-53.

Plaintiff argues that the ALJ's reliance on the VE's opinion was error because any restriction to work involving "simple, repetitive" tasks precludes work as a mail clerk since that job requires performance at level three reasoning under the DOT.[5] To support this assertion she cites Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). In Hackett, the court stated that a restriction to "simple and routine work tasks. . . . seems inconsistent with the demands of level-three reasoning." Id. at 1176. In effect, Plaintiff asserts that the VE's opinion that Plaintiff could perform the job of mail clerk, despite a limitation to jobs involving simple and repetitive tasks, conflicts with the DOT.

Defendant does not dispute Plaintiff's assertion that the mail clerk job requires a level three reasoning ability. Instead, he ignores relevant authority and cites to sources outside the Ninth Circuit to argue that the DOT does not preclude a person limited to performing only simple and repetitive tasks from performing jobs which require level three reasoning. See Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (holding that a claimant limited to simple repetitive instructions was not precluded from performing a job requiring a reasoning level of three if the job was "unskilled" and not "complex"); see also Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).

Several district court cases in this circuit question whether a claimant limited to simple,

---

[5] The DOT defines a job with a requirement for level three reasoning as requiring that a person have the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several variables in or from standardized situations." (Doc. 15, Attached Exhibit at 2).

11

repetitive tasks, is capable of performing jobs requiring level three reasoning under the DOT. In McGensy v. Astrue, 2010 WL 1875810 (C.D. Cal. May 11, 2010), the Court noted that while case law has held that "a limitation to 'simple, repetitive tasks' is consistent with level two reasoning," this restriction is "inconsistent" with the requirements for level three reasoning, in particular the job of *mail clerk*. Id. at *3 (citing Pak v. Astrue, 2009 WL 2151361 at *7 (C.D. Cal. July 14, 2009) ("The Court finds that the DOT's Reasoning Level three requirement conflicts with the ALJ's prescribed limitation that Plaintiff could perform only simple, repetitive work."); Tudino v. Barnhart, 2008 WL 4161443 at *11 (S.D. Cal. Sept. 5, 2008) ("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"; remand to ALJ to "address the conflict between Plaintiff's limitation to 'simple, repetitive tasks' and the level-three reasoning"); Squier v. Astrue, 2008 WL 2537129 at *5 (C.D. Cal. June 24, 2008) (reasoning level three is "inconsistent with a limitation to simple repetitive work")). In addition, in Bagshaw v. Astrue, 2010 WL 256544 at *5 (C.D. Cal. January 20, 2010), the court expressly cited Hackett in concluding that a *mail clerk* job, which requires level three reasoning under the DOT, was "inconsistent with [the plaintiff's] intellectual functional capacity limitation to simple, routine work."

In light of the weight of authority in this circuit, the Court concludes that the DOT precludes a person restricted to simple, repetitive tasks, from performing work, such as that of mail clerk, that requires level three reasoning. As a result, the ALJ could not rely on the VE's opinion without seeking an explanation of the apparent inconsistency between her opinion and the standards contained in the DOT. Review of the transcript reveals that the ALJ never asked the VE, in even a cursory fashion, if her opinion was consistent with the DOT.[6] As noted, though the ALJ may accept VE opinion testimony that is in conflict with the DOT, the record must contain "persuasive evidence

---

[6] At the hearing, the ALJ never specifically described the reasoning level required for Plaintiff's past work as a mail clerk, instead simply describing it as "light and unskilled" work. AR at 232. However, at one point, in stating her belief that Plaintiff could perform this work despite being limited to simple, repetitive tasks, the VE noted that Plaintiff could not perform any of her other past work because that work required "a three or four." Id. at 233. It is not clear from this cryptic reference if she was referring to DOT reasoning level classification but if she was, it implies that she erroneously believed that the position of mail clerk did not, as provided in the DOT, require level three reasoning. See id.

1 to support the deviation" and he must "obtain [from the VE] a reasonable explanation for any
2 apparent conflict." See Pinto, 249 F.3d at 846; Massachi, 486 F.3d at 1152-53. The VE may have
3 been able to reconcile any discrepancy. However, the ALJ failed utterly to ask the VE if there was a
4 discrepancy, and, if there was, for an explanation. This was error. As a result, remand to the
5 Commissioner is appropriate.[7]

6 The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or
7 to order immediate payment of benefits is within the discretion of the district court. Harman v.
8 Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). When a court reverses an administrative agency
9 determination, the proper course, except in rare instances, is to remand to the agency for additional
10 investigation or explanation. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v.
11 Ventura, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed where no useful
12 purpose would be served by further administrative proceedings, or where the record has been fully
13 developed. Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1988).

14 Because additional issues remain to be addressed upon remand, and because it is not clear
15 that an award of benefits should result after the additional issues are addressed, the Court will order
16 the matter remanded for further development and consideration of the evidence and entering of all
17 necessary and appropriate findings regarding Plaintiff's application for benefits. In concluding that
18 remand is warranted, the Court does not make any finding that the ALJ's decision to accept the VE's
19 opinion that Plaintiff retained the ability to perform her past work as a mail clerk, was per se error.
20 Nor is the Court concluding that the VE could not provide a reasonable explanation as to any
21 deviation with the requirements of the DOT for the job of mail clerk. Rather, the Court concludes
22 that the ALJ failed to elicit a reasonable explanation as to the apparent discrepancy between the
23 restrictions contained in the hypotheticals posed to the VE, restricting Plaintiff to jobs involving
24 simple, repetitive tasks, and the general requirements of the DOT that jobs such as mail clerk require

---

[7] In reaching this conclusion, the Court is mindful of the dearth of any evidence finding Plaintiff's mental impairment severe. As noted by Defendant, a finding of a "severe" impairment at Step 2 does not mandate a finding that Plaintiff is disabled. Rather, this determination is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Plaintiff has cited no medical evidence to support the ALJ's conclusion that Plaintiff's PTSD is "severe.

level three reasoning.  As a result, the Court finds that remand is appropriate.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (the decision to remand for further proceedings or simply to award benefits is within the discretion of the court).

   2. Discounting Plaintiff's Symptom Testimony

  Plaintiff has also raised a claim that the ALJ erred in discounting her symptom testimony. (Doc. 15 at 9).  In light of the Court's conclusion that this matter should be remanded because the ALJ erred in concluding, without sufficient explanation, that Plaintiff retained the functional capacity to perform her past work as a mail clerk, despite a restriction to jobs involving only simple, repetitive tasks, the Court believes any assessment of this issue is premature and declines to address it issue at this time.

### **CONCLUSION**

  Based on the foregoing, this case is hereby REMANDED to the Secretary for further proceedings consistent with this decision.  The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated:   **June 21, 2010**               **/s/ Jennifer L. Thurston**
                      UNITED STATES MAGISTRATE JUDGE